## ERNEST TATMAN v. STATE.

No. A-7307.   Opinion Filed May 31, 1930.
(288 Pac. 995.)

Ross Rizley and E. B. McMahan, for plaintiff in error.

J. Berry King, Atty. Gen., and W. C. Lewis, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, for convenience referred to as the defendant, was tried on a charge of assault with intent to kill, and convicted of assault and battery, and his punishment fixed at thirty days' imprisonment in the county jail and a fine of $100 and costs. From which judgment the defendant has appealed.

The record discloses that the prosecuting witness and H. E. Dunn had been up the greater part of the previous night and the prosecuting witness came to Dunn's home the next day, about the middle of the day, with his wagon and team and some barrels, and filled his barrels with water, and then tied his team and went into Dunn's home and went to sleep and remained there until about dark. Dunn's family had gone away and did not return until shortly after the trouble between the defendant and prosecuting witness Faulkner. The prosecuting witness fur-

ther states he left his team hitched to the wagon all day in front of H. E. Dunn's home, and remained in the house until after sundown and the stars began to shine before he started home. A great deal of testimony introduced in the case on behalf of the state tends to explain why the witness Faulkner had the pistol with him, and after taking up some time in the record building up a reason for the prosecuting witness having the pistol, tears it down by attempting to show that notwithstanding he had a pistol it was in such a condition that it could not be fired. It is apparent from the record that the pistol the prosecuting witness had was a pistol that could be fired, as it is contrary to reason that a man who anticipated trouble would go out with a pistol that could not be fired.

It is apparent from the record that there was an enmity between the defendant in this case and the witnesses Faulkner and Dunn; and it is difficult to read this record without reaching the conclusion that Dunn and Faulkner were out together the previous night for some purpose which led up to the prosecuting witness going to Dunn's home the day before the trouble at night, and remaining there all day while the family was away from home, and that Dunn and his family did not return until late in the evening, after the trouble had occurred between Faulkner and Tatman.

The testimony of the sheriff and his deputy shows that when they took the prosecuting witness to the home of Pearl Burrow, he told them he fired his pistol twice at the defendant, and the defendant shot him. The testimony shows that a part of the defendant's fence had been destroyed by cutting the wire between the posts, and other property destroyed or taken prior to the difficulty; that the night of the difficulty the defendant went out with his gun, and when he saw the party in the road whip-

ping his horse he told him to stop beating the horse and received the reply that it was none of his damn business, and immediately a shot was fired by the prosecuting witness, the bullet striking in some water near defendant, the defendant then fired at the prosecuting witness with his shotgun; another shot was fired by the prosecuting witness, and the defendant fired a second shot which struck the prosecuting witness Faulkner. The defendant did all he could for the prosecuting witness, and told the witness Dunn and his son, when they drove up, what had happened. The defendant was taken into custody and gave bond.

There is considerable testimony in the record referring to meetings of different organizations that were held in and around the neighborhood, showing that an effort was made to try to get the sureties on the bond to get off the bond and surrender the defendant. A great deal of which was immaterial and only tended to incumber the record.

The record in this case further tends to show that the prosecuting witness and witness Dunn acted together and were desirous of annoying and offending the defendant; and the record shows the defendant in this case, when he was aroused by his son telling him that some one was at the tank, went out with his gun; he did so for the reason that prior to that night his property had been destroyed by some unknown person. The record in this case is not clear as to why the prosecuting witness in this case remained at the Dunn home all day, in the absence of the Dunn family, after he had filled his water barrels and permitted his team to remain hitched to the wagon all day and waited until twilight or the stars had begun to shine to drive by defendant's place.

418

The first proposition discussed by the defendant is that the evidence is wholly insufficient to establish the crime charged or to support the judgment. The defendant was charged with assault with intent to kill, and was convicted of assault and battery. This court holds that where there is competent testimony to sustain the verdict of the jury, though the testimony is conflicting, it will not disturb the verdict. It is apparent from the verdict returned in this case that the jury believed from the testimony that the defendant had committed some offense, but had not committed as grave offense as the state had charged him with. We hold the evidence is sufficient to sustain the verdict of assault and battery.

There are other errors assigned, but, the view we take of this record, they are not of sufficient merit to reverse the case. From the facts as disclosed by the record in this case, we believe the judgment should be modified from imprisonment for 30 days in jail and a fine of $100 and costs, to a fine of $100 and costs, and as so modified, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.